Filed 7/16/24  In re A.L. CA2/6

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SIX

| | |
|---|---|
| In re A.L., a Person Coming Under the Juvenile Court Law. | 2d Juv. No. B333748 (Super. Ct. No. 2018009981) (Ventura County) |
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>A.L.,<br><br>    Defendant and Appellant. | |

A.L. appeals from the juvenile court's order transferring him to criminal court.  (See Welf. & Inst. Code,[1] § 801, subd. (a).) He contends insufficient evidence supports the transfer order, and remand is required for the court to consider his history of childhood trauma and sexual abuse.  We affirm.

---

[1] Unlabeled statutory references are to the Welfare and Institutions Code.

## FACTUAL AND PROCEDURAL HISTORY

In March 2018, Juan Gutierrez was shot in the head. He died a few days later. A subsequent investigation revealed that A.L., then 16 years old, was robbing two men at gunpoint when Gutierrez rode by on his bicycle. The two exchanged words, and A.L. shot Gutierrez. A.L. then fled the scene. The handgun used to kill Gutierrez was found in A.L.'s possession when police arrested him later that week.

In an interview with police, A.L. denied knowing Gutierrez and denied that he was present at the scene of Gutierrez's murder. A.L. later said that Gutierrez had threatened him previously, and admitted he was present at Gutierrez's shooting. He also admitted he was a member of a local gang.

In a section 602 petition, prosecutors alleged that A.L. murdered Gutierrez. They moved to transfer A.L.'s case to adult criminal court pursuant to section 707.

A.L. opposed the transfer motion because his "background, family history, [and] trauma . . . strongly support[ed] his amenability to juvenile court treatment." A.L.'s childhood was "chaotic and unpredictable." His parents argued and threw objects at each other. His mother used methamphetamine and was frequently under the influence of alcohol. He and his siblings had to ask neighbors for food. County social workers were often called to their house.

A.L. suffered a hairline fracture to his skull after he was hit by a car at age four. When he was seven, his mother's boyfriend touched his "weenie." A.L. later told a social worker that the boyfriend also "grabbed his private" in front of his mother.

The juvenile court transferred A.L.'s case to criminal court in October 2019. In January 2023, the criminal court remanded A.L.'s case in light of Assembly Bill No. 2361 (2021-2022 Reg. Sess.), which requires that transfer decisions be supported by clear and convincing evidence (Stats. 2022, ch. 330, § 1; see § 707, subd. (a)(3)).

A second transfer hearing occurred between August and October 2023. At that hearing prosecutors introduced transcripts from the 2019 transfer hearing. They also introduced probation reports prepared for that hearing and updated for the 2023 hearing.

The probation reports did not discuss programs that would be available to A.L. should he remain in the juvenile system. But they did note that A.L. had "not sought out the services or conducted himself in a manner that would suggest a true interest in rehabilitating himself." They recommended transferring A.L. to criminal court.

One of the reports said that A.L. accrued 72 write-ups while at the juvenile facility between July 2018 and October 2019. Ten of those were for fighting, with others for gang-related graffiti, threatening staff, failing to follow directives, refusing to attend school, and possessing contraband.

A.L. accrued another 87 write-ups between October 2019 and April 2023, including for communicating with inmates outside his housing unit, possessing altered razors, and destroying property. He had also been involved in 11 fights.

A.L. accrued another six write-ups in the following four months, including one for an assault that led to the victim's hospitalization.

3

Dr. Blake Carmichael, a psychologist at the University of California–Davis, testified at the transfer hearing. He said that he evaluated A.L. prior to his 2019 transfer hearing and determined that his potential for rehabilitation in the juvenile system was "[u]nlikely given the time frame [*sic*]." Dr. Carmichael's opinion in 2023 remained the same: He did not think there was a "substantial chance" A.L. could be rehabilitated by age 25.

In Dr. Carmichael's opinion, the closure of the Division of Juvenile Justice posed challenges for implementing programming in county facilities. His understanding was that implementation of Ventura County's programs was "still in progress or under development." He admitted that he had not spoken with program providers, however, but was "provided with a listing as of January [2023] of what [was] available at the juvenile facility." He also spoke "with someone in the Ventura County system about those services." That person was not involved in providing services, "but they were familiar with the programming at the juvenile facility."

The juvenile court granted the transfer motion, concluding that clear and convincing evidence supported transferring A.L. to criminal court. It found that two of the five criteria set forth in section 707, subdivision (a)(3) supported retaining juvenile court jurisdiction: A.L. had minimal contact with law enforcement and had not failed at prior rehabilitation attempts. But the other three factors weighed in favor of transferring the matter to criminal court: A.L. was in the middle of robbing two people when he shot Gutierrez, and later lied about his role in the murder. These facts showed a considerable degree of criminal sophistication and underscored the gravity of A.L.'s offense. But

4

"what stood out the most" to the court was A.L.'s "significant disciplinary history and lack of programming"—including write-ups accrued just weeks before the 2023 transfer hearing. This indicated that A.L. could not be rehabilitated in the three years before the juvenile court's jurisdiction expired. The court thus concluded that A.L.'s "case remains a criminal matter for the adult court."

## DISCUSSION

### *Sufficiency of the evidence*

A.L. contends insufficient evidence supports the juvenile court's transfer order. He maintains the prosecutor "did not present evidence demonstrating that existing programs at the Ventura [secure youth treatment facility] were unlikely to result in [his] rehabilitation, why those specific programs were unlikely to work in this particular case, or that they would take more than three years to accomplish the task of rehabilitating him." We disagree.

When prosecutors allege that a minor aged 16 years of age or older has committed a felony, they may request that the juvenile court transfer the minor to criminal court. (§ 707, subd. (a)(1).) Before the court can grant such a request, prosecutors must prove "by clear and convincing evidence that the minor is not amenable to rehabilitation while under the jurisdiction of the juvenile court." (§ 707, subd. (a)(3); Cal. Rules of Court, rule 5.770(a).) This requires the court to consider: (1) the minor's "degree of criminal sophistication," (2) "[w]hether the minor can be rehabilitated prior to the expiration of the juvenile court's jurisdiction," (3) "[t]he minor's previous delinquent history," (4) the "[s]uccess of previous attempts by the juvenile court to rehabilitate the minor," and (5) "[t]he circumstances and gravity

of the offense alleged . . . to have been committed by the minor." (§ 707, subd. (a)(3)(A)-(E).)

We review the juvenile court's findings on these five criteria and its "ultimate finding 'that the minor is not amenable to rehabilitation while under the jurisdiction of the juvenile court' " for substantial evidence. (*In re Miguel R.* (2024) 100 Cal.App.5th 152, 165 (*Miguel R.*).) This requires us to " 'determine whether the record, viewed as a whole, contains substantial evidence from which a reasonable trier of fact could have made the finding of high probability demanded by' the clear and convincing evidence standard." (*Ibid.*)

Substantial evidence supports the juvenile court's transfer order. Dr. Carmichael reviewed the programs that would be available to A.L. in Ventura County and opined that they would be "unlikely" to rehabilitate him in three years. Dr. Carmichael's review of these programs stands in contrast to the cases on which A.L. relies, in which there was no description or consideration of the programming potentially available to the minors there. (See *Kevin P. v. Superior Court* (2020) 57 Cal.App.5th 173, 199-200; *J.N. v. Superior Court* (2018) 23 Cal.App.5th 706, 721-722.) A.L. faults Dr. Carmichael for not identifying the "ARISE" program when forming his opinion. But the ARISE program is "the secure youth treatment facility in San Bernardino County." (*Miguel R.*, *supra*, 100 Cal.App.5th at p. 161.) There was thus no need for Dr. Carmichael to consider it; his review of Ventura County programs provided a sufficient basis for his opinion that A.L. was not amenable to rehabilitation while under the juvenile court's jurisdiction. (Cf. *In re S.S.* (2023) 89 Cal.App.5th 1277, 1286-1287 [highlighting need for expert opinion on programming available to minors].)

*Childhood trauma and sexual abuse*

A.L. contends the matter must be remanded for the juvenile court to consider the effect of his childhood trauma, involvement in the child welfare system, and sexual abuse on his degree of criminal sophistication. We again disagree.

As set forth above, when a juvenile court is deciding whether to grant a transfer request, one of the criteria it must consider is "[t]he degree of criminal sophistication exhibited by the minor." (§ 707, subd. (a)(3)(A)(i).) At the time of A.L.'s 2023 transfer hearing, the court was permitted to "give weight to . . . the effect of the minor's family and community environment and childhood trauma on the minor's criminal sophistication." (Former § 707, subd. (a)(3)(A)(ii).) Pursuant to Senate Bill No. 545 (2023-2024 Reg. Sess.), the court now *must* give weight to the effect of childhood trauma when evaluating the minor's degree of criminal sophistication. (§ 707, subd. (a)(3)(A)(ii).) The court must also give weight to "the minor's involvement in the child welfare" system and their status as a victim of sexual abuse. (*Ibid.*)

Senate Bill No. 545 applies retroactively to cases that are not yet final on appeal. (*Miguel R.*, *supra*, 100 Cal.App.5th at pp. 169-170.) But we do not believe it requires remanding the case here. " ' "[Minors] are entitled to [transfer] decisions made in the exercise of the 'informed discretion' of the [juvenile] court. [Citations.] A court [that] is unaware of the scope of its discretionary powers can no more exercise that 'informed discretion' than one whose [transfer decision] is or may have been based on misinformation regarding a material aspect of a [minor]'s record." [Citation.] In such circumstances . . . the appropriate remedy is to remand for [a new transfer hearing]

7

unless the record "clearly indicates" that the [juvenile] court would have reached the same conclusion "even if it had been aware that it had such discretion." ' [Citations.]" (*People v. Salazar* (2023) 15 Cal.5th 416, 424, alterations omitted.)

The record here reveals such a clear indication. In opposing the transfer motion, A.L. detailed his childhood trauma, involvement in the child welfare system, and sexual abuse. The juvenile court considered this evidence, which would have been relevant to A.L.'s degree of criminal sophistication. (See *Miguel R.*, *supra*, 100 Cal.App.5th at p. 170 [effect of minor's family and community environment and childhood trauma were factors for the court to consider in analyzing the minor's degree of criminal sophistication prior to Senate Bill No. 545].) A.L. does not explain why he believes the court would reach a different transfer decision if it considered this evidence again.

Additionally, when explaining why it ordered A.L. transferred to criminal court, the juvenile court emphasized that the most significant of the five factors set forth in section 707, subdivision (a)(3) was the limited time A.L. would remain under its jurisdiction. The court did not believe that three years was sufficient time to rehabilitate A.L. given his significant disciplinary history while in custody. That timeframe has now been shortened. We are thus persuaded that the record clearly indicates that the juvenile court would order A.L. transferred under the current version of section 707.

## DISPOSITION

The November 8, 2023, order transferring A.L. from juvenile court to criminal court is affirmed.

NOT TO BE PUBLISHED.


BALTODANO, J.


We concur:


GILBERT, P. J.


YEGAN, J.

9

Gilbert A. Romero, Judge

Superior Court County of Ventura

_____

Claudia Y. Bautista, Public Defender, and Thomas Hartnett, Deputy Public Defender, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Steven D. Matthews and Gary A. Lieberman, Deputy Attorneys General, for Plaintiff and Respondent.